FILED
2019 Feb-21 PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHANTA BOLDEN, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 2:17-cv-1520-TMP |
| CITY OF BIRMINGHAM, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This cause is before the court on the motion for summary judgment filed July 30, 2018, by the defendant, City of Birmingham. Defendant seeks dismissal of all of plaintiff's claims arising from alleged discrimination at her workplace. This matter has been fully briefed, and the court has considered the evidence and arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

**I. SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex,

2

477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. FACTS

Viewing the evidence provided by both parties in the light most favorable to the nonmoving plaintiff, the following facts are considered true for purposes of the defendant's motion for summary judgment.

Plaintiff Shanta Bolden is an African American female who was, at all times relevant to the complaint, employed as a dispatcher for the City of Birmingham, working within the police department. As of the time the matter was briefed, she remained employed as a Public Safety Dispatcher III ("PSD III") in the police department's communications division. The police chief is the department head, and plaintiff's immediate supervisors at the relevant time were Sgt. Curtis Coleman and Lt. David Marable. Both are African American males.

George Joiner, a Caucasian male, was employed as a PSD III with the City until he died in 2017. Joiner is identified by the plaintiff as the comparator who was treated more favorably than was she.

The City employs 50 to 60 public safety dispatchers, and each dispatcher is assigned to work one of three shifts, which will be referred to as day shift, evening shift, and night shift. Bolden was hired in 2003 as a PDS II. Joiner was hired on December 1, 2012 as a PSD III. On that same date, Bolden was promoted to PSD III. Bolden is not the most senior person in the communications division, but the second most senior.

Bolden has been given eight disciplinary actions during her employment, including disciplinaries for tardiness, being absent without leave, using profanity while dispatching, and sleeping on the job. She describes the disciplinary actions

as arising from "training issues." She had the right to appeal the actions. She appealed only one of them, and it was upheld. She filed her EEOC charge six months after the most recent disciplinary, which was issued for failure to abide by orders given to her by Coleman.

In the fall of 2016, Joiner filed a request for leave under the Family Medical Leave Act. He was granted continuous FMLA leave from September 29, 2016, until October 18, 2016, and he was granted intermittent FMLA leave beginning on October 19, 2016. He applied again for intermittent leave on February 17, 2017, and it was granted.[1] Joiner was terminally ill, and requested that he work the day shift so that he could attend doctors' appointments. His request was granted. Joiner died in August of 2017. Plaintiff has no personal knowledge of Joiner's illness, employment status, personnel actions, or any accommodations that may have been requested or granted on account of his medical issues.

On September 7, 2017, Bolden, appearing *pro se*, filed the complaint that commenced this action. She filed an amended complaint, with the assistance of counsel, on September 25, 2017. She asserts that she was discriminated against on

---

[1] The affidavit of a human resources officer for the defendant has described the leave requests in this manner, both having dates of February 17, 2017. Only one leave request has been provided as an exhibit. It is undisputed that Joiner was on leave, either unpaid sick leave or FMLA unpaid leave, for most of the time after September 2016. The grant of leave, however, is not alleged to be "favorable treatment" of a comparator. The plaintiff's only complaint of disparate treatment is in regard to a request to work the day shift.

6

account of her race and gender and that she was retaliated against after engaging in statutorily protected conduct. More specifically, she alleges that she was denied an opportunity to work the day shift, while Joiner, a white male, was allowed to work the day shift which also gave him weekends and holidays off.[2] She asserts that she complained about the shift change given to Joiner and that, after she complained, her overtime hours were drastically decreased.[3]

---

[2] At various places in her First Amended Complaint, the plaintiff refers to "harassment," in addition to discrimination. See Doc. 12, ¶¶ 39, 42, 59, 60, and 63. The court has not read her complaint as attempting to allege a racially or sexually hostile work environment. However, at ¶ 23 of the First Amended Complaint, she alleges that "[o]n one occasion after Plaintiff's complaints, Plaintiff was taken out of service for refusing to sign an employee notification form and *was held against her will in the lieutenant's office while Sergeant Coleman blocked the door and would not allow her to leave*." (Italics added). To the extent this is intended to allege a Title VII hostile work environment claim, it plainly fails to allege a sufficiently severe or pervasive harassment necessary to alter the terms and conditions of her employment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). This one occasion cannot be considered severe, pervasive, or abusive.

[3] Plaintiff has argued in her brief that she was denied the opportunity to attend a training seminar for which she had been selected, but that form of retaliation is not pleaded in the amended complaint. A party may not raise new claims or theories in an opposition to summary judgment. "A plaintiff may not amend [her] complaint through argument in a brief opposing summary judgment." McShane v. U.S. Attorney Gen., 144 F. App'x 779, 789 (11th Cir. 2005) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314 (11th Cir. 2004)); Diaz v. Miami Dade County, No. 09-21856-CIV, 2010 WL 3927751, at *6 (S.D. Fla. Aug. 17, 2010) (noting that a theory of retaliation not pleaded in the complaint cannot be raised in an opposition to summary judgment).

7

## III. DISCUSSION

### A. Discrimination Claims

Title VII prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Specifically, the statute provides that it shall be unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove a *prima facie* case of discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she is qualified to do the job; and (4) her employer treated similarly situated employees who are not members of the protected class more favorably. See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). A disparate treatment claim requires proof of discriminatory intent, either through the use of direct or circumstantial evidence. See, e.g., Equal Employment Opportunity Commission v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000). Direct evidence establishes that intent without the need for any inference or presumption. Id., quoting Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330

(11th Cir. 1998). Where there is no direct evidence, the plaintiff must prove intent through circumstantial evidence in accordance with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

   1. Adverse Action

It is not disputed that the plaintiff is a member of two protected classes based upon her race and gender, nor is it disputed that Joiner, a white male, was treated differently in response to a request to change from night shift to day shift.[4] The element at issue here is whether the denial of a shift change constitutes an "adverse employment action."

To support a Title VII discrimination claim, the plaintiff must demonstrate that she was subjected to an "adverse employment action." Generally, such employment actions are "ultimate employment decision[s], such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." Van Voorhis v.

---

[4] The City has argued that Joiner, who was terminally ill and was entitled to an accommodation under the Americans with Disabilities Act and leave under the Family Medical Leave Act, is not "similarly situated" to the plaintiff, who was not ill and was not seeking leave or accommodation. It should also be noted that there is no record that Joiner had the same or a similar history of disciplinary actions taken against him. However, the court need not determine whether Joiner is an appropriate comparator, but will assume without deciding that Joiner is a valid comparator.

Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008) (quoting Gupta v. Florida. Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000) ) (internal quotation marks omitted). Whether an action is "materially adverse" is viewed from the perspective of a reasonable person in the same employment circumstances. Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1195 (11th Cir. 2016) (internal quotation marks omitted).

The Eleventh Circuit Court of Appeals has stated:

> An employee must establish an "adverse employment action" by proving that a decision of the employer "impact[ed] the terms, conditions, or privileges of [her] job in a real and demonstrable way." *Davis*, 245 F.3d at 1239 (internal quotation marks omitted). This "impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* The "employee must show a serious and material change in the terms, conditions, or privileges of employment" so that a "reasonable person in the circumstances" would find "the employment action [to] be materially adverse." *Id.*; *see also Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (explaining that the "loss of supervisory responsibilities" is not a material change absent a showing of "significantly different responsibilities" (citation and internal quotation marks omitted)). In short, when an employee alleges that she was denied a different job within the same organization, she must establish that "a reasonable person faced with a choice [between the positions] ... would prefer being transferred to [the new] position." *Webb-Edwards v. Orange Cty. Sherriff's* [sic] *Office*, 525 F.3d 1013, 1032 (11th Cir. 2008). She may do so with evidence of improved "wages, benefits, or rank," as well as other "serious and material change[s] in the terms, conditions, and privileges of employment," *id.* at 1033, such as the "prestige" of the position, *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000).

Jefferson v. Sewon Am., Inc., 891 F.3d 911, 920−21 (11th Cir. 2018). It is well established that not every action taken by an employer that negatively affects an employee constitutes an adverse employment action. Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001) (overruled on other grounds as recognized by Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008)). Moreover, the standard for evaluating an adverse action for purposes of a discrimination claim is a "serious and material change" standard. Foster v. Thomas County, Ga., 927 F. Supp. 2d 1350, 1356 (N.D. Ga. 2013).

In Foster, the court held that the failure to move an employee from the night shift was not an adverse action, citing an opinion by the Tenth Circuit Court of Appeals. 927 F. Supp. 2d at 1357 (citing McGowan v. City of Eufala, 472 F.3d 736 (10th Cir. 2006) (holding that failure to move an employee from the night shift was not an adverse action where there is no difference in pay or benefits)). See also Benningfield v. City of Houston, 157 F.3d 369, 377 (5th Cir. 1998) (holding that a transfer to the night shift, alone, did not constitute an adverse action); Taylor v. Lee Cty. Sheriff's Office, 2014 WL 2565554 (M.D. Ga. June 6, 2014); but see Taylor v. Roche, 196 F. App'x 799, 803 (11th Cir. 2006) (finding that repeated denial of a shift-change request to return to the shift he previously worked, with added

comment that the plaintiff should have thought about the consequences before filing a complaint, supported a *prima facie* case of retaliation). The impact of an employer's action must not be speculative, "and must at least have a tangible adverse effect on the plaintiff's employment." Davis, 245 F.3d at 1240.

Defendant argues that Bolden was not terminated or demoted, did not suffer any reduction in pay, did not lose any benefit or promotion opportunity, and did not otherwise sustain any material change in her employment. She simply wanted, but did not get, a change in her work hours and days off.[5] In response to that argument, the plaintiff contends that she was "targeted" and "received punishment," and refers to deposition testimony relevant – if at all – to a retaliation claim. The plaintiff offers no evidence that the denial of a shift change was materially adverse or had any tangible economic detriment to her. Furthermore, the plaintiff cites no cases to support her claim that the denial of a shift change is an "adverse action," and the court finds none.

Even if the employer had *changed* her assignment from day shift to night shift, there is no precedent for finding such an action to be sufficiently "serious and

---

[5] The City has provided evidence that shift changes are generally offered on the basis of seniority, and Bolden does not dispute that she is not the most senior employee in the dispatch office, although she does argue that Joiner did not have seniority over her. She apparently premises this argument on her prior experience as a PDS II. In any event, because the court finds that the denial of a shift change is not "materially adverse," the issue of seniority is not dispositive of any issue.

12

material" to constitute an adverse action. In this case, plaintiff was not *changed* to a shift she considered less desirable, she simply was kept in the position she had been holding – the night shift. Accordingly, the plaintiff has failed to make a *prima facie* showing of discrimination and the defendant is entitled to summary adjudication in its favor on the plaintiff's claims of discriminatory treatment on account of race and gender.

### 2. Pretext

Even if Bolden's claims were sufficient to state a *prima facie* case of race or sex discrimination, the defendant still would be entitled to summary judgment in its favor. Under the McDonnell-Douglas framework, once a *prima facie* case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason" for the actions taken against the plaintiff. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). If the City comes forward with a nondiscriminatory reason for Bolden's treatment, Bolden must then show that the proferred reason was merely a pretext, and that the City's real intent was discriminatory. See Burdine, 450 U.S. at 254-56. The City's articulation of a legitimate, non-discriminatory reason for denying the shift change shifts the burden to Bolden to show that the stated reason either is not worthy of belief, or that, in light of all the evidence, a discriminatory reason more likely

13

motivated the decision than the proffered reason. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998). It is not enough for Bolden to show that the articulated reason is false; she must further show that the true reason for the denial of her shift change was discriminatory. See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). Also, it is not the duty of this court to evaluate whether the decision was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

The City has demonstrated that Bolden was not given a shift change when Joiner was because Joiner had medical needs that he asked the City to accommodate. Bolden has not produced any evidence that Joiner did not request a shift change for reasons of his illness, and there is no evidence that any supervisor denied the plaintiff's shift change based on any discriminatory reason. Bolden has not alleged, and has not offered any evidence that suggests, that either of her supervisors had any animus against African Americans or women. In this case, there is simply no evidence of any discriminatory animus that would allow a reasonable juror to determine that a discriminatory reason more likely than not motivated the decision to deny Bolden a shift change. The evidence does not demonstrate that the City's

reason for Bolden's shift assignment was pretextual; accordingly, the motion for summary judgment is due to be granted for this additional reason.

**B. Retaliation**

To establish a *prima facie* case of retaliation under 42 U.S.C. § 2000e–3(a), a plaintiff must show that she (1) engaged in ... statutorily protected expression; (2) suffered an adverse employment action; and that (3) there is a causal connection between the protected activity and the adverse action. Johnson v. Booker T. Washington Broadcasting Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000). The plaintiff asserts, and the court assumes without deciding, that her filing of an EEOC charge constitutes the requisite "protected activity."[6] She asserts that, in retaliation for the filing of the EEOC charge, her opportunities to earn overtime pay were dramatically reduced.[7] She must then demonstrate that the reduction in overtime

---

[6] While the filing of an EEOC charge is the quintessential "opposition" to illegal discrimination, courts have recognized that a plaintiff can establish a *prima facie* case of retaliation under the opposition clause of Title VII only when she also shows that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *See Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989). A plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that she subjectively (that is, in good faith) believed that the employer was engaged in unlawful employment practices, but also that her belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that her belief in this regard was honest and *bona fide*; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable. Because this decision is based upon an examination of the conduct alleged to have been retaliatory, the court need not examine the objective reasonableness of her belief.

[7] Bolden also asserts in her brief that she was retaliated against by being denied

was sufficient to constitute an adverse employment action,[8] and that it was causally connected to her EEOC charge.

The evidence, however, does not support that claim. The only case cited by the plaintiff to support her claim that a reduction in overtime hours is an adverse action for purposes of a retaliation claim is <u>Shannon v. Bellsouth Telecommunications, Inc.</u>, 292 F.3d 712 (11th Cir. 2002). In <u>Shannon</u>, the plaintiff's retaliation claim survived summary judgment when he presented evidence

---

permission to attend a NENA training seminar; however, she has failed to show that her inability to attend one conference constitutes an adverse action. The record clearly demonstrates that she attended many training seminars, and there is no evidence that her failure to attend this one created any decline in her pay, employment status, or career advancement, nor is there any evidence that it was causally related to her EEOC charge.

[8] For purposes of analyzing the "adverse employment action" element of a Title VII retaliation claim, "plaintiff must show that a reasonable employee would have found the challenged action materially adverse." <u>Burlington Northern and Santa Fe Railway Co. v. White</u>, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). "The anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm." <u>Id</u>. at 67, 126 S. Ct. at 2414. The acts must be material and significant and not trivial. <u>Id</u>. at 68, 126 S. Ct. at 2415. A materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id</u>. "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." <u>Id</u>. at 69, 126 S. Ct. at 2415. Actionable retaliatory conduct includes not only that which affects terms and conditions of employment, but also any conduct "which has a materially adverse effect on a plaintiff, irrespective of whether it is employment or workplace related." <u>Crawford v. Carroll</u>, 529 F.3d 961, 973 (11th Cir. 2008); <u>Burgos-Stefanelli v. Sec'y, U.S. Dep't of Homeland Security</u>, 410 F. App'x 243, 246 (11th Cir. 2011). The concept of an "adverse employment action" is broader with respect to retaliation claims than for discrimination claims. For discrimination claims, an adverse employment action requires a "substantial and material" change in the employee's terms and conditions of employment, but for retaliation, it need only be something that can deter a reasonable employee from pursuing a discrimination claim. <u>Crawford v. Carroll</u>, 529 F.3d 961, 974 (11th Cir. 2008). "The Title VII retaliation provision protects an employee from a wider range of conduct than the discrimination provision does." <u>Id</u>. quoting <u>Phelan v. Cook County</u>, 463 F.3d 773, 781, n. 3 (7th Cir. 2006); <u>Lloyd v. Hous. Auth. of the City of Montgomery, Ala.</u>, 857 F. Supp. 2d 1252, 1268, n. 6 (M.D. Ala. 2012) (noting that adverse action for retaliation is broader than for discrimination).

that he was "'totally blackballed' from overtime" in addition to being transferred, and where the denial of all overtime opportunity began "immediately after" the grievance meeting in which he protested the company's actions. 292 F.3d at 717. Here, plaintiff admits she continues to receive overtime, just not as much as she wants. She has presented no evidence that the reduction in her overtime is greater than that of other dispatchers. The defendant correctly observes that the plaintiff has no entitlement to work overtime, and that the assignment of overtime work is a complex process, requiring the employer to assess its need for overtime work and to balance the need against its budget before approving overtime. The court is not convinced that a reduction in overtime, where there is no evidence that other employees did not suffer similar reductions in overtime, is an "adverse action."

Even if the reduction in overtime opportunities constitutes an adverse action for purposes of the retaliation claim, the plaintiff also must demonstrate a causal connection between her complaint to the EEOC and the denial of overtime opportunity. Her own testimony refutes that connection. Bolden testified that her overtime "dropped" *before* she filed the EEOC complaint, but after she complained to Coleman that she was "tied up on other stuff and the request he was trying to have me to do I couldn't do it and asked him to do it." (Depo. of Bolden, doc. 24-1, p. 74). Second, she has provided no evidence that Coleman ever knew about her

EEOC charge. The only indication that either of her supervisors knew she had filed an EEOC complaint comes from inadmissible hearsay that Marable "said something to Angela [Cook, a co-worker]."[9] (Doc. 24-1, pp. 75-76). Marable denied having spoken to Cook about the EEOC charge. (Doc. 24-2).

In this case, the City has presented evidence that the availability of overtime hours is "dictated based on funding of overtime in the Police Department's budget and the needs of the Police Department." (Affi. of Marable, doc. 24-3, p. 4). Plaintiff has offered no evidence to contradict that statement. Her own testimony indicates that the reduction in overtime offered to her came after she refused to complete a task she was asked to do by her superior officer, Coleman, *before* she filed her EEOC charge. In short, there is no evidence that the overtime reduction experienced by the plaintiff was related in any way to the filing of an EEOC charge, or that either Marable or Coleman was aware that Bolden had filed the EEOC charge when her overtime hours were reduced. Moreover, she continues to receive some overtime work, and was not "totally blackballed" from overtime opportunities.

---

[9] The plaintiff's deposition testimony makes clear that she believed that Marable made a remark to a co-worker, Angela Cook, which Cook then reported to the plaintiff. Bolden testified unambiguously that Marable did not make the remark to her, so her knowledge of the alleged remark could come only from Cook's statements to her. This, of course, is hearsay. Plaintiff's testimony about a purported event (Marable making a remark) reported to her by a co-worker cannot be used to prove the fact that the event occurred. While Cook could testify to her direct personal knowledge of the remark, Bolden may not prove that the remark occurred by testifying that she was told about it by Cook. Thus this testimony by Bolden is inadmissible and cannot be made admissible at trial.

Accordingly, she has failed to support a *prima facie* case of retaliation, and the defendant's motion for summary judgment is due to be granted on this claim as well.

## IV.   CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and the law governing this action, this court determines that the defendant's motion for summary judgment (doc. 23) is due to be GRANTED, and her claims of discrimination on the basis of race and gender are due to be DISMISSED WITH PREJUDICE.  Similarly, her claim that she suffered retaliation also is without merit and is due to be DISMISSED WITH PREJUDICE.

A separate order will be entered in accordance with the findings set forth herein.

DONE this 21st day of February, 2019.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE